In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3880

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARIUS VAISETA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 922—**Paul E. Plunkett**, *Judge.*

ARGUED MAY 21, 2003—DECIDED JUNE 25, 2003

Before FLAUM, *Chief Judge*, and POSNER and MANION, *Circuit Judges*.

FLAUM, *Chief Judge.* Darius Vaiseta was charged with five counts of receiving, possessing or selling stolen motor vehicles, in violation of 18 U.S.C. § 2313, one count of conspiracy to commit the same, in violation of 18 U.S.C. § 371, and one count of altering a vehicle identification number ("VIN"), in violation of 18 U.S.C. 511(a)(1). After hearing twelve to fourteen hours of evidence at trial and deliberating for just over seven hours, the jury informed the court that it had reached a verdict as to six counts but was deadlocked on the remaining count. Despite Vaiseta's request that the jury be encouraged to keep deliberating, the court accepted the jury's partial

verdict, which found Vaiseta guilty of the five counts of auto theft and not guilty of the one count of VIN alteration. The court declared a mistrial on the remaining conspiracy count, and Vaiseta now appeals. We affirm.

## I. BACKGROUND

The government returned a seven-count indictment against Vaiseta based on its investigation of his role in an auto theft ring. The indictment alleged that Vaiseta participated in a scheme to steal cars in Canada, "clone" the stolen cars (i.e., swap the visible VIN on the stolen car with a VIN from a non-stolen vehicle of similar make, model and year, and then obtain a duplicate set of title documents based on the history of the non-stolen car), submit the Canadian title documents to the Illinois Secretary of State in exchange for "valid" Illinois titles and registrations for the stolen cars, and then sell the stolen cars to innocent, unsuspecting customers through classified ads. Vaiseta was indicted after United States Customs seized a stolen car that was being driven across the border from Canada by one of Vaiseta's employees (Vaiseta also runs a lawful business selling Kirby vacuum cleaners). The government later discovered that Vaiseta paid this employee $1,000 to pick up the car from Canada and drive it back to Illinois.

The government also attempted to prove that Vaiseta had conspired with his fiancé and a man named Algis Bagdonas in a larger auto theft ring. Vaiseta's bank records revealed that he paid $54,000 to Bagdonas between December 1999 and May 2000, and that Vaiseta sent $15,750 to Canada during that time. Vaiseta testified that he met Bagdonas when he first came to the United States, and that he called Bagdonas when he needed vehicles for his vacuum cleaner sales business because he had heard Bagdonas got good deals on cars.

At the conclusion of the 12-14 hour trial, the jury deliberated for approximately seven hours before sending a note to the judge[1] stating: "We feel we are in a deadlock on one count. It appears we are not going to be able to change this, if we stay in this position what would be the procedure at this point." After discussing the issue with the parties and without objection from either side, the judge sent the jury a note asking them to clarify their status on the other counts: "Have you reached a verdict on six counts and are deadlocked on one? Please answer either yes or no." The jury responded "Yes." The government then asked the judge whether it would be appropriate to accept a partial verdict and declare a mistrial on the remaining count. Vaiseta objected, expressing his preference that the jury be permitted to continue deliberating rather than be called in to deliver a partial verdict. The judge then suggested, and both sides agreed, to send another note to the jury asking whether they had any hope at breaking their impasse: "Do you believe that if you continue to deliberate you have any hope or expectation of resolving deadlock on remaining count." To this final query the jury replied: "We believe that if we continue to deliberate we will not be able to come to a unanimous decision on the remaining count."

In response to the jury's third admission of deadlock, the judge consulted with the parties and ruled that he would "bring the jury out, take the verdict as they have it and declare a mistrial to the count as to which they have not reached a verdict." Vaiseta again objected to taking a partial verdict on the six unanimous counts and

---

[1] All of the following conversations and decisions regarding the jury's inability to reach a verdict on one of the seven counts were conducted by the parties via telephone with Judge Plunkett, who was out of chambers that afternoon for a doctor's appointment. Judge Guzman received the jury's verdict in his stead.

reiterated that he wanted the jury to continue deliberating until they reached agreement on all seven counts. But the judge decided that there would be no benefit from asking the jury to continue its deliberations once it had plainly declared itself deadlocked. Over Vaiseta's objection, the jury was called into the courtroom to deliver its partial verdict.

The jury found Vaiseta guilty of the five counts of receiving, possessing or selling stolen motor vehicles, not guilty of the one count of VIN alteration, and deadlocked on the one count of conspiracy. Following Vaiseta's sentencing for the five counts of auto theft, the government dismissed the conspiracy charge. Vaiseta now appeals the court's decision to halt the jury's deliberations and declare a mistrial on the conspiracy count.

## II. DISCUSSION

We review the district court's declaration of a mistrial for abuse of discretion, *United States v. Byrski*, 854 F.2d 955, 960 (7th Cir. 1988), and we accord great deference to the court's decision when the "manifest necessity" justifying the mistrial is rooted in jury deadlock, *Arizona v. Washington*, 434 U.S. 497, 511 (1978). The decision to declare a mistrial is committed to the sound discretion of the trial judge because he or she is most aware of the circumstances of the trial and in the best position to balance the interests of the defendant in having a tribunal "favorably disposed to his fate" render a verdict, *United States v. Jorn*, 400 U.S. 470, 485 (1971), and of the public in "fair trials designed to end in just judgments," *Lovinger v. Circuit Court of 19th Judicial Circuit*, 845 F.2d 739, 743 (7th Cir. 1988).

In this case the court was well within its discretion when it declared a mistrial on the one deadlocked count. In determining whether the jury deadlock justified a

mistrial, we consider factors such as: "the jury's own statements that it cannot agree, the length of deliberations, the length of trial, the complexity of the issues presented, the jury's communications to the judge, and the impact that further, forced deliberations might have on the verdict." *Escobar v. O'Leary*, 943 F.2d 711, 718 (7th Cir. 1991); *Byrski*, 854 F.2d at 961. Looking at the facts here in light of our decisions in *Escobar* and *Byrski*, we find that every consideration is met. First, the jury itself stated three different times that it was deadlocked as to one of the seven charged counts. Second, the judge noted that the length of the jury's deliberations (7 hours), compared with the length of the evidentiary portion of the trial (12-14 hours) and the complexity of the issues tried, seemed reasonable and provided the jury with adequate time to reach a fair decision. Third, the judge communicated with the jury three times regarding its professed impasse, each time taking care to clarify where the jury stood with respect to its deliberative process. Finally, against all of these indications that the jury was in fact deadlocked, there was no contrary evidence to suggest that any further deliberations would result in a unanimous verdict on the remaining count.

Nevertheless, Vaiseta claims that the court acted too hastily and should have given the jury additional time to deliberate, perhaps calling them back into the courtroom for a *Silvern* instruction or *Allen* charge, *see United States v. Silvern*, 484 F.2d 879 (7th Cir. 1979) (concerning appropriate supplemental instructions where jury seems unable to reach verdict) and *Allen v. United States*, 164 U.S. 492 (1896) (same), before "simply declar[ing] a mistrial . . . over defendant's objections." Appellant's Br. at 14. Vaiseta suggests that with more time the jury might have reached a different outcome: "Perhaps, had the jury been permitted to deliberate further, they might have convicted the defendant on the conspiracy count . . .

Perhaps, however, the jury might have chosen to acquit the defendant. It is reasonable to conclude that they might have revisited those five theft counts." Appellant's Br. at 16. But Vaiseta's "might have" argument, without any evidence that his rights and interests were compromised by the declaration of a mistrial, cannot prevail against the specific facts and circumstances of this case. By all indications, the jury in this case had deliberated long enough to know that it was hopelessly deadlocked on one of the seven charged counts. In particular, the fact that the jury found Vaiseta guilty of the five identical counts of auto theft, but not guilty or not sure about the two different counts of VIN alteration and conspiracy, strongly suggests that the jury considered all of the evidence presented at trial and took care to evaluate the evidence in light of the various charges levied against Vaiseta. This record is simply devoid of evidence that the jury gave up too soon, or that it would have reached any different verdict after further deliberation.

### III. CONCLUSION

The district court did not abuse its discretion by declaring a mistrial due to jury deadlock on one of the seven charged counts. Vaiseta's conviction is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*