In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-4013

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHNNIE L. TAYLOR,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 CR 30114—**David R. Herndon**, *Chief Judge.*

ARGUED FEBRUARY 17, 2009—DECIDED JUNE 26, 2009

Before POSNER, KANNE, and WOOD, *Circuit Judges.*

KANNE, *Circuit Judge.* The appellant, Johnnie Taylor, was accused of being a felon in possession of a firearm and was tried twice in front of a jury. The first trial resulted in a deadlocked jury, prompting the court to declare a mistrial. At the second trial, the jury found Taylor guilty as charged. On appeal, Taylor presents three arguments, the first two of which relate to the mistrial. First, Taylor argues that the district court erred in declaring the mistrial. Second, he claims that trial counsel was

ineffective because the attorney did not seek Taylor's input on whether to recommend to the court that it declare a mistrial. Taylor's third argument, which involves Taylor's second trial, is that the district court should have excluded certain statements from the government's evidence. We find no merit in Taylor's claims and now affirm.

## I. BACKGROUND

In the early evening of September 12, 2005, local law enforcement responded to a domestic disturbance call at an apartment complex in Alorton, Illinois. Police Officer Rick Schell was the first to arrive on the scene, where he spoke with Mary Weaver, the woman who had placed the call. Weaver pointed across the street and informed Schell that a man later identified as Johnnie Taylor had taken a gun in that direction. She said that Taylor took the weapon to a man she called "Mario," who the police subsequently learned was Mario Dowell.

Looking in the direction that Weaver pointed, Officer Schell saw Dowell working on an automobile in front of a neighboring apartment building. At the same time, Taylor appeared and approached Officer Schell from across the street. Warned by Weaver that Taylor might be armed, Officer Schell handcuffed Taylor and checked him for a weapon, finding none. Chief Leondra Hughes and Captain Robert Cummings then arrived on the scene and began investigating the handgun's where-abouts. Upon questioning by Hughes, Dowell admitted that Taylor had given him a gun and that he had hidden

it for Taylor in a third party's apartment. Dowell then led the police to the gun's hiding place, where they recovered the weapon.

On August 18, 2006, the government filed a two-count indictment against Taylor, only the first count of which is at issue on this appeal. That count alleged that Taylor, who had previously been convicted of burglary, was a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Taylor's first jury trial began on June 18, 2007. The presentation of evidence took approximately six hours over two days and concluded shortly after 2:30 p.m. on the afternoon of June 19. After final instructions, the jury began deliberations that same afternoon at 3:58 p.m., and the court recessed at 5:10 p.m. The jury resumed deliberations at 9:00 a.m. the next morning, June 20, and deliberated throughout the day.

The jury sent three notes to the judge over the course of its deliberations on June 20. In the first, the jury requested to rehear Mary Weaver's 911 telephone call and the recorded statements Taylor and Dowell had given to the police. In the second note, the jury asked for clarification on a point of Chief Hughes's testimony. The court granted the first request and, while working with the attorneys to formulate a response to the second, received the jury's third note. Sent to the judge at 3:50 p.m., the third note read: "We are undecided on guilty/not guilty. There are several points we can't agree on. The jury is divided on whether to continue. Your direction is required." After discussions with both attor-

neys, the court sent the requested transcript excerpt of Chief Hughes's testimony and stated only, "Please consider the Court's reply to your request regarding Chief's Hughes [sic] testimony and in conjunction with all the other evidence in the case." The jury later asked to adjourn for the day, writing that "we are aggressively going over (flow charting) each witness and piece of evidence to arrive at a unanimous decision." The judge granted the jury's request and recessed the court at 5:00 p.m.

The jury returned for a third day of deliberations at 9:00 a.m. on June 21. At 10:10 a.m., the court received a note from the jury that read as follows:

> We, the jury, are "deadlocked" in decision—since day 1 until today. We are 8 guilty and 4 not guilty—this spit [sic] has not changed since we began. We have debated each witness' testimony and piece of evidence and no juror has changed their verdict. We ask the court to accept our deadlocked condition and conclusion to this case.

The judge sought input from both the prosecutor and defense counsel. The prosecutor suggested that the judge encourage the jury to continue its deliberations. Defense counsel, citing concerns that the jury would "cave in one way or the other," recommended that the court accept the jury's request and declare a mistrial. The judge, after discussing the length of the presentation of evidence during the trial and of the jury's deliberations, the simplicity of the issues, the jury's communications, and his concerns about the potentially coercive effects of additional prodding by the court, declared a mistrial.

Taylor's second trial commenced on July 9, 2007. Over two days of evidence, the government called a number of witnesses, including Officer Schell, Captain Cummings, Chief Hughes, and Mario Dowell. Neither the government nor the defense called Mary Weaver to testify. Dowell's testimony was particularly instructive on the case's key issue—whether Taylor had knowingly possessed the firearm. Dowell explained to the jury that on September 12, 2005, he had been working on a car in front of his apartment when Taylor, an acquaintance of Dowell's, approached and asked Dowell to "put a gun up for him," i.e., hide Taylor's weapon. Dowell testified that he believed Taylor later intended to recover the firearm from its hidden location. Dowell told the jury that he took Taylor around to the back of the apartment building, where Taylor gave the gun to Dowell. Knowing that a nearby apartment belonging to Laricka Perkins, an uninvolved third party, would be unlocked, Dowell took the gun and hid it in Perkins's apartment.

On July 10, the jury returned a verdict of guilty as charged in count one of the indictment. On December 6, 2007, the district court sentenced Taylor to seventy-eight months' imprisonment, followed by a three-year term of supervised release. Taylor now appeals, citing concerns related to both the mistrial declaration and the admission into evidence of certain statements during his second trial.

## II. ANALYSIS

On appeal, we divide Taylor's arguments according to the trial to which they pertain. Taylor's initial two

claims involve the mistrial declaration during his first trial. His final claim relates to the admission of certain evidence during his second trial. As we explain below, we disagree with Taylor's arguments on all fronts.

### A. The Mistrial (Trial Number 1)

The Double Jeopardy Clause of the United States Constitution bars a defendant's retrial unless the district court declared a mistrial either (1) with the defendant's consent, or (2) because the declaration was manifestly necessary. *United States v. Combs*, 222 F.3d 353, 358-59 (7th Cir. 2000); *see also* U.S. Const. amend. V; *Arizona v. Washington*, 434 U.S. 497, 504-05 (1978) (discussing a defendant's "valued right to have his trial completed by a particular tribunal" and stating that a prosecutor "is entitled to one, and only one, opportunity to require an accused to stand trial"). Taylor contests the district court's decision to declare the mistrial without his consent and without finding manifest necessity and claims that trial counsel was ineffective because the attorney did not seek Taylor's consent to the mistrial. Neither claim withstands scrutiny.

### 1. The District Court's Declaration of a Mistrial

A court may declare a mistrial if it determines that such a declaration is "occasioned by manifest necessity." *Combs*, 222 F.3d at 358-59. Such a determination is proper with or without the defendant's consent, *see id.*, and need not be made explicitly, *see Camden v. Circuit Court of the Second*

*Judicial Circuit*, 892 F.2d 610, 614 (7th Cir. 1989). A mistrial is manifestly necessary only if the "scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Id.* (quotations omitted).

We review a court's decision to declare a mistrial for an abuse of discretion. *United States v. Vaiseta*, 333 F.3d 815, 818 (7th Cir. 2003). Our review becomes even more deferential in a situation such as this, where the "manifest necessity" prompting the mistrial is a deadlocked jury. *See id.*; *see also Washington*, 434 U.S. at 509; *Williams v. Bartow*, 481 F.3d 492, 500 (7th Cir. 2007) (noting that the reviewing court applies varying degrees of scrutiny within the abuse-of-discretion standard depending on the events precipitating the mistrial). Such deference is warranted because the trial judge is in the best position to balance the defendant's interest in having a given jury decide his fate against the public's interest in fair trials and just judgments. *Vaiseta*, 333 F.3d at 818.

In *Vaiseta*, we discussed several factors a court should consider before declaring a mistrial due to a deadlocked jury: (1) statements from the jury that it cannot agree; (2) length of the deliberations; (3) length of the trial; (4) complexity of the issues; (5) the jury's communications to the judge; and (6) the potentially prejudicial impact of continued forced deliberations. *Id.* Here, although the court never explicitly stated that it found the mistrial to be of "manifest necessity," the court clearly contemplated each of the *Vaiseta* factors before it declared a mistrial, a decision that we conclude was well within the bounds of the court's discretion.

First, the court had two written statements from the jury indicating its inability to agree, one on June 20, the second on June 21. Second, the court discussed both the length of the presentation of evidence and the length of the deliberations, noting that the evidence had taken approximately six hours and that the jury deliberations had been ongoing for ten hours. Said the judge: "Just seems like with six hours of testimony, with over ten hours, thereabouts, of deliberation, that we're not going to get a different result." Third, the judge expressed his opinion that the single issue facing the jury—whether Taylor had knowingly possessed the gun—was relatively simple. Next, the jury's communications made clear that it had made little progress in three days; in fact, the jury's split had not changed since it began deliberating. And finally, the judge explained his fear of coercing the jury into a decision by requiring further deliberations. The judge discussed each of these factors on the record before announcing his decision to declare the mistrial. We fail to see how such a measured decision, made with ample information and full appreciation for the *Vaiseta* factors, could be an abuse of discretion. *Cf. United States v. Jackson*, 546 F.3d 465, 471 (7th Cir. 2008) (noting that a judge must exercise his discretion, i.e., "consider[] the factors relevant to that exercise," before we accord his decision deference).

On appeal, Taylor essentially asks us to substitute our judgment for that of the district judge. He suggests, for example, that the issue was not as simple as the court believed and that the length of deliberations was not out of proportion to the length of the evidence. Taylor argues

that the court should have ordered the jury to deliberate "at least until lunch" and should have reread the *Silvern* instruction, *see United States v. Silvern*, 484 F.2d 879, 883 (7th Cir. 1973),[1] an instruction that we have held to be content-neutral and non-coercive, *United States v. Sanders*, 962 F.2d 660, 676 (7th Cir. 1992) (quoting *United States v. Beverly*, 913 F.2d 337, 352 (7th Cir. 1990)). But when reviewing only for an abuse of discretion, second-guessing

---

[1] The *Silvern* instruction reads as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

484 F.2d at 883.

the district court is something we will not do. *See Am. Nat'l Bank & Trust Co. of Chi. v. Reg'l Transp. Auth.*, 125 F.3d 420, 431 (7th Cir. 1997). A discretionary decision, as this one was, implies a range of acceptable outcomes. *See United States v. Koen*, 982 F.2d 1101, 1114 (7th Cir. 1992). So long as the judge's conclusion was within that range of outcomes, we will defer to his judgment, not substitute our own. *See id.*; *see also United States v. Souffront*, 338 F.3d 809, 819 (7th Cir. 2003) (stating that when reviewing for an abuse of discretion, this court will not second-guess the trial judge's decision or reweigh the evidence). Further, even if we were to conduct a more searching analysis of the court's conclusions, we see no fault in the decision it reached. As such, we hold that the district court's decision to declare a mistrial during Taylor's first jury trial was not an abuse of discretion. We turn now to Taylor's ineffective assistance of counsel claim.

### 2. Ineffective Assistance of Trial Counsel

Taylor next argues that he received ineffective assistance of counsel because his attorney did not consult Taylor before recommending to the court that it accept the jury's deadlocked position and declare a mistrial. The test for ineffective assistance of counsel is well established. *See Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, Taylor must show both (1) that his trial counsel's performance was objectively deficient; and (2) that counsel's deficiency prejudiced his defense. *Id.* at 687; *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000).

As a preliminary matter, we note our standard reluctance to consider ineffective assistance of counsel claims on direct appeal. *United States v. Brooks*, 125 F.3d 484, 495 (7th Cir. 1997). As we have said:

> [S]uch claims are very unlikely to find any factual support in the trial record and an adverse determination on direct appeal will be res judicata in any subsequent collateral attack. . . . [A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose.

*United States v. Cooke*, 110 F.3d 1288, 1299 (7th Cir. 1997) (citations and quotations omitted); *see also Brooks*, 125 F.3d at 495.

The undeveloped record in this case provides a perfect example of why we typically decline to consider ineffective assistance arguments for the first time on direct appeal. Despite Taylor's arguments to the contrary, there is no indication in the record whether Taylor's trial counsel consulted with him before suggesting to the court that it declare a mistrial. Due to the strong presumption of counsel's effectiveness, *see Strickland*, 466 U.S. at 689, if we were to express an opinion on counsel's performance based on such an incomplete record, it would have to be in counsel's favor. But we need not make such a conclusive finding in this case, nor need we defer our decision on this claim, because Taylor fails to make the requisite showing of prejudice. *Strickland*'s two-part test requires *both* deficient performance *and* prejudice, 466 U.S. at 687; requiring a more fully

developed record, therefore, would only delay the inevitable.

Courts may deny ineffective assistance of counsel claims for lack of prejudice without ever considering the question of counsel's actual performance. *Id.* at 697; *see, e.g.,* *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003); *Matheney v. Anderson*, 253 F.3d 1025, 1042 (7th Cir. 2001). To demonstrate prejudice, Taylor must show "that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696. Taylor's entire argument, however, hinges on his trial counsel's purported deficiencies; he makes no claims related to the prejudice he suffered. We presume this is because he suffered none. As we have already discussed, the district court, after careful consideration of the *Vaiseta* factors and over the objection of the prosecution, implicitly found a mistrial to be of manifest necessity. The court did not need Taylor's permission to make that decision, and there is no reason to believe that an objection by defense counsel, or even by the defendant himself, would have changed the court's conclusion. Absent the requisite showing of prejudice, Taylor's ineffective assistance of counsel claim fails. We turn now to Taylor's final argument.

B.  *Admissibility of Mary Weaver's Statement (Trial Number 2)*

Finally, Taylor claims that the district court erred during the second trial by admitting into evidence Mary Weaver's statement to Officer Schell that "he just took a

gun across the street." Taylor bases this argument on two grounds. First, he asserts that the evidentiary rules against hearsay prohibited the admission of Weaver's statement. *See* Fed. R. Evid. 801-802. Second, he argues that admitting Weaver's statement without calling Weaver herself to testify violated his constitutional right to confront witnesses against him. *See* U.S. Const. amend. VI. We find both arguments unavailing.

We typically review a district court's decision to admit statements into evidence for an abuse of discretion. *United States v. Akinrinade*, 61 F.3d 1279, 1283 (7th Cir. 1995). During trial, however, defense counsel raised no objections to the references to Weaver's statement, limiting our review to plain error. *See United States v. Olano*, 507 U.S. 725, 731 (1993); *see also* Fed. R. Crim. P. 52(b). Under this standard, we will not reverse unless we find not only an error, but an error "that is 'plain' and that 'affect[s] substantial rights.'" *Olano*, 507 U.S. at 732 (alteration in original). Even in the presence of a plain error, the decision whether to correct the error lies in our discretion, which the Supreme Court has instructed us not to exercise "unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (alteration in original) (quoting *United States v. Young*, 470 U.S. 1, 15 (1985)).

We turn first to Taylor's hearsay arguments. The Federal Rules of Evidence prohibit the admission of hearsay: out-of-court statements made by non-witnesses that are offered to prove the truth of the matter asserted. *See* Fed. R. Evid. 801-802; *United States v. Breland*, 356

F.3d 787, 792 (7th Cir. 2004). Here, Taylor challenges numerous references made by Officer Schell and others to Mary Weaver's statement that "he just took a gun across the street." Such testimony created a potential hearsay problem because neither side called Weaver to testify, relying instead on other people to recount to the jury Weaver's statements. We find that the district court committed no error because the challenged statement did not satisfy the definition of hearsay.

We have recognized repeatedly that statements offered to "establish the course of the investigation," rather than to prove the truth of the matter asserted, are nonhearsay and therefore admissible. *Akinrinade*, 61 F.3d at 1283; *see also, e.g.*, *Breland*, 356 F.3d at 792; *United States v. Linwood*, 142 F.3d 418, 425 (7th Cir. 1998); *United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994). *But see United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) (discussing, in the context of conversations between DEA agents and their confidential informants, that "[a]llowing agents to narrate the course of their investigations . . . would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule").

Here, the references to Mary Weaver's statement by Schell, Cummings, and Hughes were offered to explain their own actions in the course of their investigation—for example, why they looked across the street, why they questioned Mario Dowell, and why they handcuffed Taylor when he approached. Indeed, Weaver's statement was the jumping-off point for the entire investigation. Our conclusion might be different if, as in *Silva*, the

police were testifying to statements harvested from an ongoing relationship with an informant, *see* 380 F.3d at 1019, but those are not the facts of this case; here, the police were responding to a developing, potentially dangerous situation. The government offered Weaver's statement in the context of the officers' testimony to explain the course of law enforcement's investigation, not as evidence that Taylor possessed the gun. The district court, with no objections made by either party, properly admitted the testimony as nonhearsay.

Turning, finally, to Taylor's Confrontation Clause argument, we again find no plain error. Absent "complicating circumstances," such as a prosecutor who exploits nonhearsay statements for their truth, nonhearsay testimony does not present a Confrontation Clause problem. *Lee v. McCaughtry*, 892 F.2d 1318, 1325 (7th Cir. 1990); *see also Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). We are satisfied that there were no "complicating circumstances" here; thus, because the testimony by Schell, Cummings, and Hughes was nonhearsay, nothing ran afoul of the Confrontation Clause. *See Martinez*, 951 F.2d at 133-34. Furthermore, given the other evidence in the record of Taylor's gun possession, namely, Mario Dowell's testimony, Taylor cannot claim that his "substantial rights" were affected. *See Olano*, 507 U.S. at 734 (stating that in most cases an error affects substantial rights only if was prejudicial, i.e., it affected the outcome of the proceedings); *Akinrinade*, 61 F.3d at 1283 (noting the absence of a "miscarriage of justice" when reviewing a Confrontation Clause claim for plain error).

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM Taylor's conviction.