IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,091

STATE OF KANSAS,
*Appellee*,

v.

GRADY ALLEN KORNELSON,
*Appellant.*

SYLLABUS BY THE COURT

1.

If a district court declares a jury deadlocked and orders a mistrial when the defendant does not object or consent to the mistrial, a retrial should be permitted only when there was a manifest necessity for the court's action. The contrary holding in *State v. Graham*, 277 Kan. 121, 83 P.3d 143 (2004), is overruled.

2.

A district court's jury instruction that states, "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find [the defendant] guilty," is legally appropriate.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 15, 2019. Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed July 2, 2020. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, was on the briefs for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

1

The opinion of the court was delivered by

BILES, J.: The second jury to hear his case convicted Grady Kornelson of driving under the influence and illegal transportation of liquor. The first trial ended when the court declared a mistrial without Kornelson's consent because of a jury deadlock. He appeals his convictions, arguing the second trial violated his right against double jeopardy as guaranteed by the United States Constitution. He also claims the jury instruction on the State's burden of proof improperly discouraged the jury from exercising its nullification power. A Court of Appeals panel affirmed. *State v. Kornelson*, No. 118,091, 2019 WL 1213248, at *6 (Kan. App. 2019) (unpublished opinion). We agree with the panel's result, although we do so by applying "manifest necessity" to the double jeopardy issue, rather than the prosecutorial "goading" standard it used.

We hold "manifest necessity" is the correct measure for declaring a jury deadlocked under the United States Supreme Court's double jeopardy caselaw when the defendant does not object or consent to the mistrial. The contrary holding in *State v. Graham*, 277 Kan. 121, 83 P.3d 143 (2004), is overruled. We also hold the district court appropriately declared a mistrial under the circumstances based on that manifest necessity standard. Finally, we reject the jury instruction challenge. See *State v. Patterson*, 311 Kan. 59, 68-69, 455 P.3d 792 (2020). We affirm Kornelson's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

As a result of a traffic stop, the State charged Kornelson with felony driving under the influence under alternative theories of driving with excessive blood or breath alcohol concentration and driving while incapable of safely operating a vehicle because of alcohol impairment. See K.S.A. 2019 Supp. 8-1567(a)(2), (3). It also charged him with

2

illegally transporting liquor in an open container and operating a vehicle without a previously required ignition interlock device. See K.S.A. 2019 Supp. 8-1017(a)(4) (operating vehicle without required interlock device); K.S.A. 2019 Supp. 8-1599(b) (illegal transportation). Kornelson pled no contest to the ignition interlock charge and was ordered to pay a $100 fine and to restart his ignition interlock requirement period. He went to trial on the remaining charges.

In the first trial, the evidence was presented in a single afternoon. Shortly after 4:30 p.m., the court instructed the jury, and the parties presented their arguments. The court sent the jury to deliberate, but the record does not reflect what time. The district court anticipated the arguments and instructions would last until 5:15 p.m. About an hour and 15 minutes after that, the jury sent a note to the court, saying "Count 1 Hung" and "Count 2 Hung[.]" Counts 1 and 2 were the alternate DUI charges. The court went back on the record with the jury, Kornelson, and the parties' attorneys present:

> "The Court: . . . [M]y court reporter . . . has advised me that you have advised her that you feel like you cannot reach a unanimous verdict. . . . Is that an accurate statement?
>
> "[Foreperson]: Yes ma'am, at this point in it.
>
> "The Court: It is 6:30 at night and everyone is probably kind of weary and you could come back in the morning and what I would do is have you convene at 8:30 a.m. and as soon as I would be advised you're all present, I would give the go ahead to begin deliberating again. I will ask you, [jury foreperson], do you think that that might be a fruitful course of action?
>
> "[Foreperson]: Well, on one of the counts—
>
> "The Court: Okay. Now—

3

"[Foreperson]: That's a yes or no?

"The Court: That's a yes or no.

"[Foreperson]: Um, we will have access to all of the information we had today again; is that correct, the evidence?

"The Court: Yes.

"[Foreperson]: Okay. I guess I would have to ask my team whether or not they felt it would be worthwhile. I don't have that much say over that, and I don't want to say something that might be incorrect. That's all. Does that make sense?

"The Court: Would it create a hardship on any of you and if you will just show me by hands, if I required you to come back in the morning? [Juror A.], it would?

"[Juror A.]: I'm down one employee and I'm the only other person so this, yes, it is going to be a hardship.

"The Court: Okay. Alright. Well, you have certainly given it your all. It's a long day to be here from nine until 6:30. I'm going to declare what we call a hung jury. That sounds kind of harsh. We're not going to do anything to you but I do appreciate your service. I realize that is for some of you perhaps a frustrating outcome, and but it is a legitimate outcome and sometimes it happens. So I believe you have been given the work releases that you need. Those of you, Ms. Potter has them. You are now released from the prohibition about talking because the case is done. So if you want to talk to anyone about the case, you are free to do that. And you're also free to go with my thanks."

Neither Kornelson nor the State objected to the trial court discharging the jury.

After the second trial, a new jury found Kornelson guilty on both DUI theories and the open container charge. The district court sentenced him to 6 months' jail time followed by 12 months' probation for the DUI based on excessive blood or breath alcohol content. It fined him $100 for the open container.

Kornelson appealed, arguing for the first time to the Court of Appeals that the second trial violated his right against double jeopardy because the record did not reflect a "manifest necessity" for the mistrial. He also claimed the district court erred by giving a reasonable doubt instruction that he believes prohibited the jury from exercising its nullification power.

A panel affirmed the convictions. *Kornelson*, 2019 WL 1213248, at *6. It reached the merits of the double jeopardy claim after concluding Kornelson properly invoked exceptions to the general rule prohibiting new issues from being raised for the first time on appeal. It then rejected the claim on its merits. 2019 WL 1213248, at *3. It held he failed to show prosecutorial conduct that "goaded" him into not objecting to the mistrial, citing *Graham*. It also held there was no error in the reasonable doubt instruction. 2019 WL 1213248, at *6.

Kornelson timely petitioned this court for review of the panel's decisions, which we granted. The State did not cross-petition for review of the panel's preservation holding on the double jeopardy issue. Jurisdiction is proper. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

5

To decide whether Kornelson's retrial violated double jeopardy when the district court held the jury was deadlocked after a brief, inconclusive exchange with two jurors and just over an hour of deliberation, two questions must be resolved. First, what test applies? And second, did double jeopardy bar Kornelson's second trial under the circumstances using that standard?

*Standard of review*

"Whether a particular criminal defendant's protection against double jeopardy was violated is a question of law over which [the court has] unlimited review." *State v. Morton*, 283 Kan. 464, 468, 153 P.3d 532 (2007).

*Manifest necessity applies*

For its test, the panel required Kornelson to establish "'governmental conduct'" "'intended to provoke [him] into seeking a mistrial,'" i.e. "goading," because he did not object to the court's jury deadlock determination. *Kornelson*, 2019 WL 1213248, at \*3. To justify this, the panel relied on our court's 2004 decision in *Graham*, 277 Kan. 121, which had similar facts. There, the jury informed the district court twice it was deadlocked, so the court declared a mistrial. The court did not consult defendant before doing so, and defense counsel did not object. The *Graham* court held the "manifest necessity" standard did not apply because defendant did not object at the time. It explained this in just two sentences:

> "In *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 (2003), this court stated: 'The long-established test applied where the first trial was terminated *over objection* of the defendant is the "manifest necessity" standard. [Citation omitted.] Retrial is

6

constitutionally permissible only where a high degree of necessity supports the mistrial.' (Emphasis added.) Since Graham did not object to the granting of a mistrial, the 'manifest necessity' standard is not applicable." 277 Kan. at 133.

Kornelson argues *Graham* cannot be reconciled with United States Supreme Court precedent interpreting the Double Jeopardy Clause. We agree.

"The United States Supreme Court's interpretation of the United States Constitution is controlling upon and must be followed by state courts." *State v. Lawson*, 296 Kan. 1084, Syl. ¶ 1, 297 P.3d 1164 (2013). The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." It applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Section 10 of the Kansas Constitution Bill of Rights also contains a protection against double jeopardy that is "'equivalent to the protection guaranteed in the United States Constitution.'" *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 (2003); see *State v. Miller*, 293 Kan. 535, 544, 264 P.3d 461 (2011).

Although double jeopardy protection "unequivocally prohibits a second trial following an acquittal," its application is more nuanced when the first trial ends in a mistrial. See *Arizona v. Washington*, 434 U.S. 497, 503-04, 505, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). The general rule is set out in *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L. Ed. 165 (1824), in which a defendant argued double jeopardy barred a later prosecution after "the jury, being unable to agree, were discharged by the Court from giving any verdict upon the indictment, without the consent of the prisoner, or of the Attorney for the United States." 22 U.S. at 579; see also *United States v. Dinitz*, 424 U.S. 600, 606-07, 96 S. Ct. 1075, 47 L. Ed. 2d 267 (1976) (noting *Perez* supplies the rule

7

when "a mistrial has been declared without the defendant's request or consent"). The *Perez* Court held the defendant could be retried, reasoning:

> "We are of opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, *the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated.* They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." (Emphasis added.) 22 U.S. at 580.

This "manifest necessity" standard simultaneously safeguards two competing interests: "the defendant's 'valued right to have his trial completed by a particular tribunal,'" and "the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington*, 434 U.S. at 503, 505. When "the judge, acting without the defendant's consent, aborts the proceeding, the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.'" *United States v. Jorn*, 400 U.S. 470, 484, 91 S. Ct. 547, 27 L. Ed. 2d 543 (1971). But while a second proceeding *can* cause unfairness to the defendant—including increased emotional and financial burden, prolonged stigma, and increased risk of convicting despite innocence—"the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded" need not create that unfairness. *Washington*, 434 U.S. at 505. When the defendant objects to a mistrial, the balance tips

8

toward the public interest only when there is a manifest necessity for it. See 434 U.S. at 505.

The Court has reaffirmed manifest necessity is required even when a trial court dismisses a jury before a verdict sua sponte, without objection from either the prosecutor or defense counsel. See *Renico v. Lett*, 559 U.S. 766, 773-74, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010). In holding a state trial court did not unreasonably apply clearly established federal law when it retried defendant after sua sponte declaring the jury deadlocked, the *Reinco* Court cited *Perez* as supplying the standard by which the trial court's decision must be measured. 559 U.S. at 774; see also *Dinitz*, 424 U.S. at 607 (reasoning that absent a defense motion, if mistrial is needed for "prosecutorial or judicial error," the "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings").

The manifest necessity standard does not apply when the defendant requests or consents to a mistrial. *Dinitz*, 424 U.S. at 607. "[O]ne of the principal threads" of the double jeopardy protection "is the right of the defendant to have his trial completed before the first jury empaneled to try him . . . ." *Oregon v. Kennedy*, 456 U.S. 667, 673, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). So when the defendant makes the request the barrier to later prosecution is generally removed. *Dinitz*, 424 U.S. at 607-08; see *Kennedy*, 456 U.S. at 673. But a "narrow exception" remains. *Kennedy*, 456 U.S. at 673. That is because the Double Jeopardy Clause

> "protect[s] a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor' threatens

9

the '(h)arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. [Citations omitted.]" *Dinitz*, 424 U.S. at 611.

This means that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Kennedy*, 456 U.S. at 676.

In Kornelson's appeal, the panel noted both he and the State agreed the manifest necessity standard applied. *Kornelson*, 2019 WL 1213248, at *2. But it still held the goading standard applied based on *Graham*, observing that it was not free to deviate from our precedent. 2019 WL 1213248, at *4 ("So even if Kornelson has a reasonable argument that the standard should be different, we are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position."). We signal our disapproval today by expressly overruling *Graham* on this point.

As noted, the *Graham* court gave no real analysis to its equating the standard applicable to circumstances when a defendant consents to a mistrial to those when a mistrial is declared without objection. *Graham*, 277 Kan. at 133 ("Since Graham did not object to the granting of a mistrial, the 'manifest necessity' standard is not applicable. The correct standard, where the defendant does not object, is the same standard as if Graham had consented to the mistrial."). Indeed, the *Graham* court cited no authority for its holding. And, as explained, six years after *Graham*, the United States Supreme Court decided *Renico*, which observed that under the "'clearly established Federal law' in this area . . . trial judges may declare a mistrial 'whenever, in their opinion, taking all the

10

circumstances into consideration, there is a manifest necessity' for doing so." *Renico*, 559 U.S. at 773-74.

We hold that when a trial court sua sponte declares a jury deadlocked and orders a mistrial when the defendant does not object or consent to the mistrial, retrial should be permitted only when there was a manifest necessity for the court's action. *Graham*'s holding to the contrary is overruled.

*Manifest necessity justified the mistrial*

When confronted with a potential jury deadlock, the trial court has "broad discretion in deciding whether or not 'manifest necessity' justifies a discharge of the jury," and its "decision to declare a mistrial when [it] considers the jury deadlocked is therefore accorded great deference by a reviewing court." *Washington*, 434 U.S. at 509-10. The "especially compelling" reasons for this deference in deadlocked jury cases are that,

> "On the one hand, if [the judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors. If retrial of the defendant were barred whenever an appellate court views the 'necessity' for a mistrial differently from the trial judge, there would be a danger that the latter, cognizant of the serious societal consequences of an erroneous ruling, would employ coercive means to break the apparent deadlock. Such a rule would frustrate the public interest in just judgments." 434 U.S. at 509-10.

But the trial court's deference is not absolute:

11

> "'[I]f the record reveals that the trial judge has failed to exercise the "sound discretion" entrusted to him, the reason for such deference by an appellate court disappears.' Thus 'if the trial judge acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling, close appellate scrutiny is appropriate.' Similarly, 'if a trial judge acts irrationally or irresponsibly, . . . his action cannot be condoned.'" *Renico*, 559 U.S. at 775.

See also *Washington*, 434 U.S. at 510 n.28 ("It should be noted . . . that the rationale for this deference in the 'hung' jury situation is that the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate.").

Kornelson gives four reasons why he believes there was no manifest necessity to discharge his earlier jury. First, while the jury indicated it was hung on the DUI charges, it might have been able to reach a verdict on the open container charge. Second, the jury was given only about an hour to deliberate. Third, he sees the foreperson's response to the court's inquiry as indicating more deliberations might have been productive. And fourth, in his view, the court based its decision "primarily on" the potential hardship to the jurors instead of whether the jury would be able to reach a verdict.

Federal appellate courts have identified several factors useful in determining when jury deadlock justifies a mistrial: "'the jury's own statements that it cannot agree, the length of deliberations, the length of trial, the complexity of the issues presented, the jury's communications to the judge, and the impact that further, forced deliberations might have on the verdict.'" *United States v. Vaiseta*, 333 F.3d 815, 818 (7th Cir. 2003); see *United States v. Gordy*, 526 F.2d 631, 635-36 (5th Cir. 1976); see also *Renico*, 559 U.S. at 778 (holding state court did not unreasonably deviate from established federal law in determining retrial permitted after jury deadlock declaration, noting trial was not

complex, jury's notes to judge could be read to reflect "substantial disagreement," and foreperson told judge jury would not be able to reach a verdict). "[A] statement from the jury that it is hopelessly deadlocked" may be "a crucial factor, although a present inability to agree is not determinative of the question of whether future deliberations might prove helpful." *Gordy*, 526 F.2d at 636.

In Kornelson's case, the record establishes the required manifest necessity to discharge the jury. The jury's note itself showing the deadlock and the simplicity of the issues outweigh the problems he identifies. To begin with, the evidence was straightforward, even though the jury deliberated for only about an hour. The note conveyed the jury was unable to agree on the excess-breath-alcohol DUI charge, which the foreperson confirmed. This charge was supported by the breathalyzer results, so the only issue for the jury was whether to believe that evidence. And Count 2 involved a somewhat more involved—but still straightforward—determination whether the jury believed Kornelson could not drive safely.

Kornelson's observation that the first jury had no apparent trouble with the open container charge does not affect the analysis. The jury's note shows it believed it was at an impasse on the other two charges. And it is at least debatable whether partial verdicts are permitted under Kansas law. Compare *Tomlin v. State*, 35 Kan. App. 2d 398, 402, 130 P.3d 1229 (2006) ("[T]he status of Kansas law was (and is) that Kansas does not recognize partial verdicts, and absent a verdict on all charges in conformity with K.S.A. 22-3421 a defendant can be retried following a mistrial due to a hung jury."), with *Zink v. State*, No. 95,477, 2007 WL 570197, at *1 (Kan. App. 2007) (unpublished opinion) (noting jury acquitted defendant of one of two counts but was hung on the other, district court declared mistrial on unresolved charge and the State retried it). Importantly, Kornelson does not support his partial verdict argument with any legal authority. "[F]ailure to support an argument with pertinent authority or to show why the argument is

13

sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *State v. Tague*, 296 Kan. 993, 1001, 298 P.3d 273 (2013).

Kornelson argues the foreperson's responses indicated more deliberations might have been productive, and that the district court veered into improper territory by inquiring whether another day's deliberations would be a hardship. But the foreperson's unwillingness to speak for the entire jury about further deliberations does not undermine the jury's explicit written declaration that it was hung on the DUI counts. And although the court shifted the subject to juror hardship as it probed the situation, it did not show the mistrial was based on jurors' desire not to continue. To the contrary, the court remarked they had "certainly given it [their] all."

Given these circumstances, coupled with the deference and discretion our caselaw affords the trial judge making these decisions, we hold the record supports the determination that the jury was deadlocked under the manifest necessity standard. The second trial did not violate Kornelson's double jeopardy rights.

THE JURY INSTRUCTION WAS LEGALLY APPROPRIATE

Kornelson next argues the jury instruction describing the State's burden of proof impermissibly prevented the jury from exercising its nullification power. At Kornelson's second trial, the district court instructed the jury without objection that:

"No. 5. The State has the burden to prove Grady Kornelson is guilty. Grady Kornelson is not required to prove he is not guilty. You must presume he is not guilty unless you are convinced from the evidence that he is guilty. The test you must use in determining whether Grady Kornelson is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Grady Kornelson not guilty. If you have no reasonable doubt as to the truth of each of the claims

14

required to be proved by the State, you *should* find Grady Kornelson guilty." (Emphasis added.)

Kornelson claims the jury should have been instructed that it "may" convict him absent reasonable doubt. He asserts the instruction given misstated the law. But this argument lacks merit. *Patterson*, 311 Kan. at 68-69.

In *Patterson*, the court held that a similar reasonable doubt instruction did not undermine the jury's nullification power, and, therefore, was legally appropriate. Telling the jury it "'should' convict absent reasonable doubt" is appropriate because it is improper to tell the jury it may nullify. 311 Kan. at 68-69 (citing *State v. Boothby*, 310 Kan. 619, 630, 448 P.3d 416 [2019]). Similarly, the instruction does not "raise the 'directed verdict' concerns" underlying the court's disapproval of an instruction that did foreclose nullification as a possibility by mandating that the jury "''will enter a verdict of guilty''" absent reasonable doubt. 311 Kan. at 68-69 (distinguishing *State v. Smith-Parker*, 301 Kan. 132, 340 P.3d 485 [2014]).

We hold it was not a misstatement of the law to tell the jury: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you should find Grady Kornelson guilty."

Affirmed.

MICHAEL E. WARD, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Michael E. Ward was appointed to hear case No. 118,091 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.