In the

# United States Court of Appeals

### For the Seventh Circuit

No. 07-3945

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALVIN FOUSE III,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 06-CR-100—**Charles N. Clevert, Jr.**, *Judge.*

ARGUED NOVEMBER 5, 2008—DECIDED AUGUST 24, 2009

Before EASTERBROOK, *Chief Judge*, and RIPPLE and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Alvin Fouse was convicted after a jury trial of conspiracy to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), and possession of a firearm in furtherance of that conspiracy, 18 U.S.C. § 924(c). He was sentenced to a total of 270 months' imprisonment. On appeal Fouse argues that the evidence underlying his convictions is insufficient, that both the district court's

decision to give the jury a "dynamite charge" during its deliberations and the charge itself were in error, and that his prison term for the drug conspiracy is unreasonable. We reject each of these contentions and affirm the judgment.

**I.**

Fouse was indicted in 2006. In addition to the conspiracy and gun counts, he was also charged with conspiracy to launder money, 18 U.S.C. § 1956(h). Two codefendants pleaded guilty to the drug conspiracy, and Fouse went to trial along with his father, who was charged only on the money-laundering count. At trial the government called Rosendo Heredia, Fouse's principal drug accomplice, who testified that beginning in 2002 he delivered a kilogram of cocaine every few days to Fouse's house on 21st Street in Racine, Wisconsin. According to Heredia, Fouse paid cash for the first kilogram of cocaine he purchased but all subsequent deals were on credit. Heredia recounted that, after serving various jail terms in 2004, he again began supplying Fouse with any quantity of cocaine he could obtain. The two of them, Heredia said, then bought and sold drugs together until they were moving three to five kilograms of cocaine per week. Heredia stated that he obtained cocaine from his sources and delivered it to Fouse's 21st Street home, where he and Fouse would then jointly decide what to do with the drugs, whom to sell to, and what price to charge. Five witnesses testified that Heredia and Fouse supplied cocaine to drug dealers in Racine and that Fouse

knew buyers were cooking the powder cocaine into crack for resale. Witnesses also testified to seeing kilogram packages of drugs delivered to Fouse's 21st Street house and to seeing exchanges of large amounts of money between Fouse and other drug dealers.

In August 2005 officers from the Racine Police Department executed search warrants at the 21st Street house and an auto-repair garage belonging to Fouse's father. The 21st Street house was Fouse's only residence, which he shared with his wife. In the garage of that house, police officers found a small bag of cocaine and wrappers consistent with those used to package kilograms of cocaine. Inside the house officers discovered an arsenal of weapons, including a rifle, shotguns, handguns, ammunition, a speedloader (used to load ammunition very quickly), a flash suppressor (which preserves a shooter's night vision by reducing a gun's muzzle flash), and a bullet-proof vest. Two of the handguns were found in the basement next to a container covered with cocaine residue. At Fouse's father's auto-repair garage, police found a gram scale, a mixer, plastic baggies, a bottle of inositol (a "cutting" agent commonly used to dilute powder cocaine), several boxes of baking soda, a bowl covered with cocaine residue, and eight more guns. Police also retrieved a total of $100,000 in currency during the searches. Heredia testified that, despite the August 2005 searches, he continued to supply Fouse with cocaine through September 2005.

Fouse did not testify or present evidence at trial. During closing argument his lawyer attacked the credibility of the

witnesses who identified themselves as Fouse's drug associates. Counsel characterized Heredia as an "admitted liar" and argued that the evidence failed to prove the existence of a drug conspiracy. Counsel noted that the searches of Fouse's home and his father's garage had turned up only 7.3 grams of cocaine, which, counsel insisted, undermined all the testimony about Fouse being involved with large amounts of drugs. With respect to the gun count, counsel argued that no government witness had ever seen Fouse with a gun, though this contention ignored testimony from a police officer who recovered a gun from Fouse during a traffic stop in 2003. According to the defense, the guns found at Fouse's home were for personal protection. Finally, defense counsel also insisted that the government had failed to prove a money-laundering conspiracy because there was no evidence that Fouse made purchases or gave money away in order to hide the proceeds of drug sales.

After a six-day trial the jury deliberated for nearly eleven hours before the foreman sent a note to the judge explaining that the jurors had not been able to reach a verdict on the conspiracy count and had not even considered the other charges. The foreman stated in his note that he was "having trouble keeping tempers from flaring" and "would appreciate [the judge's] thoughts on this matter." As things stood, the foreman added, he did not think the jury would ever be able to agree on a verdict. Fouse asked for a mistrial and objected, as did the government, when the district court instead decided to let the deliberations continue. The court then gave the following supplemental instruction to the jury orally:

There's no doubt that you recognize that the verdict must represent your considered judgment, but it's also important to point out that it is your duty as jurors to consult with one another and to deliberate with a view to reaching a unanimous decision. I emphasize that and also that you must proceed in a fashion with due regard for the views of fellow jurors.

In other words, you've got to decide the case for yourselves but only after an impartial consideration of the evidence with your fellow jurors. So that means you have to really communicate. You have to open your eyes with regard to the evidence and how your other—fellow jurors have evaluated the evidence.

I must also point out, particularly in view of the fact that notes were being taken, that if someone has something in his notes or her notes it doesn't mean that they are in a better position to evaluate the evidence than you as a collective body. Stated differently, no greater weight should be given to the view of a juror with notes than a juror who does not have something in his or her notes.

I must also point out that as you proceed you should do so respectfully. You've mentioned that tempers have flared; and I will tell you, and I mentioned this to counsel, it is not uncommon for tempers to flare during jury deliberations. It's hard work. It's very hard work, but it's necessary work; but as you proceed, do not hesitate to change your opinion if you are convinced your initial impressions and opinions were erroneous.

On the other hand, do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of fellow jurors or, particularly at this stage, for the mere purpose of returning a verdict. I emphasized earlier and will repeat now, you are not partisans. You're not combatives. You're judges of the facts. Your interest—Your sole interest is to determine the truth from the evidence, not from speculation, but from the evidence as you find it collectively in this case.

So with that in mind I ask that you go back to the jury room and put forth additional effort, notwithstanding a note, to reach a unanimous decision in this matter.

Fouse objected after the instruction was read because, he said, its phrasing unduly emphasized that the jurors could change their minds. The government echoed the defense's concern that this instruction would lead the jury to reach a verdict not based on the evidence or law. Less than two hours later, the jury returned with verdicts of guilty as to Fouse on the conspiracy and gun counts and not guilty on the money-laundering charge. The panel also acquitted Fouse's father. On the conspiracy count, the jury specifically found that the crime involved 500 or more grams of powder cocaine and 5 or more grams of crack.

At Fouse's sentencing hearing, two of the trial witnesses maintained that they had told Fouse they needed to buy pure powder that could be turned into crack. The first witness, John Mares, said he bought 1.5 kilograms of

cocaine from Fouse over the course of 12 weeks. The second witness, Demetreus Green, estimated that his total purchases from Fouse over two years totaled about 20 kilograms. Based on the testimony of these two witnesses, the district court attributed 1.5 kilograms of crack to Fouse. The court set a base offense level of 36, *see* U.S.S.G. § 2D1.1(c)(2), and applied no adjustments. That offense level, coupled with Fouse's criminal history category of II, yielded on the conspiracy count a guidelines imprisonment range of 210 to 262 months. The court sentenced Fouse to 210 months for that offense and imposed a consecutive 60-month term for the gun count, for a total of 270 months.

## II.

On appeal Fouse begins by challenging the sufficiency of the evidence supporting his conspiracy conviction. He argues that the government's succession of witnesses established only that he bought cocaine from Heredia and sold it to other drug dealers. These were nothing but buyer-seller relationships, Fouse contends, which do not prove the existence of a drug conspiracy. This is a contention we encounter frequently, but one that rarely succeeds because, more often than not, it depends on looking at the evidence from the defendant's perspective and not the jury's. *See United States v. Rollins*, 544 F.3d 820, 835 (7th Cir. 2008); *United States v. Bender*, 539 F.3d 449, 453 (7th Cir. 2008); *United States v. Fuller*, 532 F.3d 656, 662 (7th Cir. 2008). But we must view the trial evidence in the light most favorable to the government and will

uphold the jury's verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see United States v. Bailey*, 510 F.3d 726, 733 (7th Cir. 2007).

Fouse is correct that a conspiracy conviction under § 846 requires more than an agreement to buy or sell drugs; the statute is violated only if two or more persons have agreed to fulfill a separate criminal objective, such as distributing drugs. *See United States v. Kincannon*, 567 F.3d 893, 897 (7th Cir. 2009); *United States v. Colon*, 549 F.3d 565, 567-68 (7th Cir. 2008). On the other hand, Fouse is wrong in assuming that the government cannot sustain a conspiracy charge without proving conclusively that every alleged coconspirator had more than a buyer-seller relationship with the defendant. *See United States v. Avila*, 557 F.3d 809, 816 (7th Cir. 2009) ("Proving that [defendant] joined the conspiracy alleged in the indictment does not require that the government prove he conspired with the *individuals* named in the indictment."); *United States v. Carrillo*, 435 F.3d 767, 777 (7th Cir. 2006); *United States v. Contreras*, 249 F.3d 595, 598 (7th Cir. 2001). What is essential, instead, is that the government prove the requisite agreement between the defendant and at least one other coconspirator, whether or not named in the indictment. *See Kincannon*, 567 F.3d at 898; *Avila*, 557 F.3d at 816; *Carrillo*, 435 F.3d at 777.

The indictment in this case alleges that Fouse conspired with Mario and Raymond Garcia, and with "others known and unknown" to the grand jury. Fouse might have a

plausible argument that his connection to codefendants Mario and Raymond Garcia and to others who received cocaine from him and Heredia was limited to buyer-seller; the government's evidence of a more-significant relationship between Fouse and many of the witnesses is, given the need for proof beyond a reasonable doubt, tenuous. But Fouse cannot make the same assertion about Heredia. Heredia testified that he often sold cocaine to Fouse, typically on credit, but the two of them sometimes purchased cocaine jointly. In any event, Heredia added they worked together to sell the drugs. Heredia explained that he and Fouse jointly decided how much to "cut" the cocaine, whom to sell to, and what price to charge for the drugs. And, said Heredia, the two men often accompanied each other on drug sales. None of this testimony is acknowledged by Fouse, who wants us simply to disregard it. But the choice whether to believe Heredia was for the jury, not us. *See United States v. Longstreet*, 567 F.3d 911, 919 (7th Cir. 2009); *Rollins*, 544 F.3d at 835. And a rational jury could have concluded beyond a reasonable doubt from that testimony that Fouse and Heredia had much more than a buyer-seller relationship. *See United States v. Harris*, 567 F.3d 846, 851-52 (7th Cir. 2009) (concluding that defendant and coconspirator had more than buyer-seller relationship because they pooled money and shared resources for extended period of time); *United States v. Zaragoza*, 543 F.3d 943, 948 (7th Cir. 2008) (finding conspiracy based on duration of relationship, sales on credit, and "interlocking" financial interests); *Bender*, 539 F.3d at 454 (upholding jury's finding of drug conspiracy based on large-

quantity sales on credit showing shared stake in venture).
Thus, whether or not the conspiracy was as broad as the
government tried to make it out to be, the evidence
that Fouse was part of a conspiracy to distribute cocaine
is beyond dispute.

**III.**

Fouse claims on appeal that the government failed to
prove he possessed a firearm in furtherance of the drug
conspiracy. Fouse attacks two elements of the § 924(c)
charge. First, he contends that the government did not
establish his possession of the weapons because, in his
view, the jury could not find that he exercised exclusive
control over the guns seized at either his 21st Street
home or his father's auto-repair garage. Second, Fouse
argues that, even if he possessed the guns, the govern-
ment did not prove that their presence furthered the drug
conspiracy. Once again we review the evidence in the
light most favorable to the government and will overturn
the verdict only if there is no evidence from which a
rational jury could find guilt beyond a reasonable doubt.
*See United States v. Duran*, 407 F.3d 828, 839 (7th Cir. 2005).

As far as possession, Fouse is really saying that he could
not be convicted without proof of actual possession or
direct physical contact with a gun. And no witness, he
emphasizes, placed any of the seized guns in his hands.
But even without proof of actual possession, a defendant
may nevertheless be held accountable on a theory of
constructive possession if the evidence establishes that
he owned or controlled the gun. *See United States v.*

*McLee*, 436 F.3d 751, 758 (7th Cir. 2006); *United States v. Walls*, 225 F.3d 858, 864 (7th Cir. 2000). Here, even putting aside the eight guns found at the auto-repair garage because others had access to the garage and those weapons, a jury could conclude that Fouse constructively possessed the guns found at his 21st Street home. Fouse and his wife lived there alone, and there was no evidence that others had access to the house when the couple was not home. The weapons were found throughout the house, including Fouse's bedroom, and though Fouse had been arrested with a handgun in his possession two years before these weapons were found, there was no suggestion that Fouse's wife ever possessed these or any other guns. Fouse's assertion that a jury could not rationally conclude that the weapons were constructively possessed by him is frivolous. *See McLee*, 436 F.3d at 757 (upholding finding of constructive possession based on evidence that defendant observed frequenting home where gun was found although he did not live there and had not been seen with gun).

Fouse's argument about the "in furtherance" element fares no better. A jury can rely on circumstantial evidence in finding that a gun in the defendant's constructive possession was kept to further a drug trafficking crime. *See United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2009); *United States v. Doddles,* 539 F.3d 1291, 1295 (10th Cir. 2008). Factors distinguishing innocent gun possession from possession in furtherance of a drug crime include the nature of the drug activity, the type and accessibility of the weapon, whether the weapon was loaded, and the proximity of the weapon to drugs or drug

profits. *See United States v. Seymour*, 519 F.3d 700, 715 (7th Cir. 2008); *Duran*, 407 F.3d at 840. "One legal theory that has been advanced, and unanimously accepted, is that a possessed gun can forward a drug-trafficking offense by providing the dealer, his stash or his territory with protection." *Duran*, 407 F.3d at 840.

The indictment in this case charged Fouse with possessing a firearm in furtherance of the drug conspiracy on or around the date the search warrants were executed in August 2005. At oral argument defense counsel primarily argued that Fouse could not be convicted of possessing the seized guns in furtherance of the charged conspiracy because, drawing from his first appellate claim, the conspiracy charge was not adequately proven. But we have already rejected that contention, and it has no more traction the second time around. In his appellate brief Fouse tried a different tack and argued, not that the conspiracy was not established, but that the government failed to prove that the guns found in his home or in his father's garage were used in aid of his drug dealing. Although no trial witnesses reported seeing the guns Fouse kept near his drug stash and profits, the jury still could have concluded that Fouse had a reason for stashing loaded guns nearby and at the ready. Fouse and Heredia were distributing up to five kilograms of cocaine per week, and most of their work in dividing and repackaging the cocaine occurred at Fouse's 21st Street home. That residence was Fouse's base of operations, and both the volume and types of weapons found there during the August 2005 search—a rifle, shotguns, and handguns plus a speedloader and flash suppressor—

suggest that these were not used for ordinary personal protection but rather to thwart those who might try to relieve Fouse of his inventory and profits.

## IV.

Fouse's third argument on appeal is that the district court abused its discretion by ignoring the requests from both sides to declare a mistrial and instead giving a supplemental jury instruction, also known as an "*Allen* charge" or a "dynamite charge." *See Allen v. United States*, 164 U.S. 492 (1896); *United States v. Vaiseta*, 333 F.3d 815, 818 (7th Cir. 2003); *United States v. Collins*, 223 F.3d 502, 5098 (7th Cir. 2000). We give great deference to a district court's decision whether to declare a mistrial on the basis of a deadlocked jury because the trial judge is most aware of the circumstances of the trial. *See United States v. Taylor*, 569 F.3d 742, 746 (7th Cir. 2009); *United States v. Charlton*, 502 F.3d 1, 5 (1st Cir. 2007); *Vaiseta*, 333 F.3d at 818. The fact that both the defense and the government wanted a mistrial does not affect our unwillingness to second-guess the court's exercise of discretion. *See Taylor*, 569 F.3d at 747. In this case, the district court did not feel that the jury's deliberations had been unusually long and wanted to give the jury a reasonable opportunity to reach a verdict. The trial had lasted for 6 days, and at the point when the foreman's note was delivered to the court, the jury had been out just 11 hours. Thus, we cannot say that the district court abused its discretion. *See United States v. Kramer*, 955 F.2d 479, 488-89 (7th Cir. 1992) (concluding that district court did not err by declining to

declare mistrial despite several messages from jury stating that it was deadlocked); *United States v. Lindell*, 881 F.2d 1313, 1321 (5th Cir. 1989) (upholding district court's refusal to declare mistrial despite four notes from jury stating that they were "hopelessly deadlocked"); *United States v. Armstrong*, 654 F.2d 1328, 1333 (9th Cir. 1981) (finding no error in district court's decision to give two *Allen* charges).

Fouse, however, criticizes more than the decision to refuse a mistrial; he also argues that the district court's instruction strays too far from the parameters of *United States v. Silvern*, 484 F.2d 879 (7th Cir. 1973) (en banc). In *Silvern* we approved a model instruction for a district court to give a deadlocked jury if the court decides that a mistrial would be premature:

> The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a

verdict. You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

*Silvern*, 484 F.2d at 883. In the years following *Silvern*, we have also approved the modified *Silvern* instruction set forth in § 7.06 of the Federal Criminal Jury Instructions of the Seventh Circuit. *See United States v. Collins*, 223 F.3d 502, 505 (7th Cir. 2000); *United States v. Rodriguez*, 67 F.3d 1312, 1320 (7th Cir. 1995).

But we do not require district courts to replicate verbatim either the *Silvern* or § 7.06 instructions. *See Collins*, 223 F.3d at 509 ("Any deviation from *Silvern* is not necessarily reversible error."); *United States v. Rodriguez*, 67 F.3d 1312, 1319-20 (7th Cir. 1995) ("[W]e have not required trial courts to replicate the [*Silvern*] language with no deviation."); *United States v. Hamann*, 688 F.2d 507, 511 (7th Cir. 1982) (explaining that district court's additions to language of § 7.06 instruction were not erroneous because remarks did not depart from spirit of *Silvern*). If a district court deviates from the approved model instructions, we will reverse if the ultimate instruction given was "coercive of unanimity." *United States v. Willis*, 523 F.3d 762, 775 (7th Cir. 2008); *see also United States v. Degraffenried*, 339 F.3d 576, 580-81 (7th Cir. 2003); *Rodriguez*, 67 F.3d at 1321.

Here, when considering the dynamite charge as a whole, we discern no basis to conclude that the district court encouraged the jurors to cast aside their opinions for the expedience of reaching a verdict. At trial Fouse objected to the supplemental instruction on the ground

that it emphasized that jurors may change their minds. Yet both the *Silvern* and § 7.06 instructions encourage jurors to reexamine their views and, if warranted, change their opinions. That, after all, is the very point of a dynamite charge. *See United States v. LaVallee*, 439 F.3d 670, 689 (10th Cir. 2006); *United States v. Wills*, 346 F.3d 476, 495 (4th Cir. 2003). At all events, the instruction in this case, although not a verbatim repetition of the approved language, is substantively indistinguishable from the language of *Silvern* and § 7.06. Moreover, immediately after telling jurors that they should reevaluate their opinions, the district court reminded them that in reconsidering their views they should not surrender their "honest conviction as to the weight or effect of evidence." And Fouse's complaint strikes us as odd because it assumes that the jurors who would change their minds favored acquittal, but the foreman's note did not disclose how the jury was divided, and apparently the government feared that the jurors were leaning toward acquittal. The district court's instruction does not imply that only jurors in the minority should rethink their position, *see Bedford v. Collins*, 567 F.3d 225, 238 (6th Cir. 2009), nor is there any indication that the district court knew the identity of the holdout jurors when it gave the dynamite charge, *see United States v. Williams*, 547 F.3d 1187, 1206 (9th Cir. 2009).

On appeal Fouse does not challenge any particular portion of the instruction but argues instead that the circumstances of the jury's verdict demonstrate that the dynamite charge was coercive. He asserts that the jury's two-hour deliberation after receiving the supplemental

instruction suggests that jurors ignored the evidence in order to reach a verdict. But the timing of the jury's verdict is not a sound basis from which to infer that the jury felt coerced. *See United States v. Banks*, 514 F.3d 959, 975 (9th Cir. 2008) (concluding dynamite charge was not coercive even though jury deliberated only two hours after receiving charge); *United States v. Miller*, 159 F.3d 1106, 1110-11 (7th Cir. 1998) (upholding guilty verdict rendered one hour after judge's instruction to dead-locked jury); *United States v. Coffman*, 94 F.3d 330, 336 (7th Cir. 1996) (upholding guilty verdict rendered 20 minutes after judge's instruction to deadlocked jury). And if Fouse was correct that we should measure the coercive potential of the dynamite charge, not by the instruction's language, but by the events following its delivery, we would not overlook that the instruction did not dissuade the jury from acquitting Fouse and his father on the money-laundering count. Finally, to the extent that Fouse additionally contends that the jury's drug quantity findings somehow show that the jury ignored the evidence, we simply fail to comprehend his point. The cocaine and crack amounts determined the statutory minimum sentence for the conspiracy, and any perceived connection to the guilty verdicts eludes us.

## V.

Finally, Fouse takes issue with his prison sentence for the conspiracy count. He first argues that the district court, in calculating his base offense level, erroneously attributed 1.5 kilograms of crack to him based on the

testimony of Mares and Green. The evidence at trial established that Fouse sold powder cocaine to both men, who then processed that powder into crack. Fouse submits that he did not undertake joint criminal activity with either man, and so it was improper to hold him accountable for what they did with the powder cocaine he sold them. We review for clear error a district court's drug-quantity calculations. *Rollins*, 544 F.3d at 837; *United States v. White*, 519 F.3d 342, 348 (7th Cir. 2008). The government has the burden to establish the amount of drugs attributable to a defendant by a preponderance of the evidence. *United States v. Stott*, 245 F.3d 890, 911 (7th Cir. 2001); *United States v. Gee*, 226 F.3d 885, 898 (7th Cir. 2000). A defendant is accountable for the conduct of others if that conduct was in furtherance of a jointly undertaken criminal activity and reasonably foreseeable in connection with that criminal activity. U.S.S.G. § 1B1.3; *United States v. Soto-Piedra*, 525 F.3d 527, 531-32 (7th Cir. 2008).

Here, the district court's determination that Fouse was responsible for 1.5 kilograms of crack is not clearly erroneous. Mares and Green testified to buying a total of 21.5 kilograms of powder cocaine from Fouse over the course of twelve weeks and two years, respectively. Mares and Green emphasized that their negotiations with Fouse had focused on the purity of the powder he could provide because, as they made clear to him, they were processing all of the powder into crack for resale. Mares also testified that eventually Fouse sold to him on credit and waited to be paid from Mares's crack profits. Based on this testimony the district court could conclude that

Fouse was engaged in a drug-distribution enterprise with Mares and Green, and that Fouse therefore was accountable for the crack sold by Mares and Green. The government's evidence of joint activity between Fouse and these witnesses may not be enough to overcome a buyer-seller defense under the reasonable-doubt standard that governed at trial, but at sentencing, as the district court noted, the government was required to prove Fouse's relationship with the men only by a preponderance. *See United States v. Burns*, 526 F.3d 852, 859 (5th Cir. 2008); *United States v. Artley*, 489 F.3d 813, 822-23 (7th Cir. 2007). Moreover, given that Fouse sold Mares and Green 21.5 kilograms of powder cocaine, the court's drug-quantity finding represents a generous conversion rate of 7.3% for powder to crack cocaine. Courts routinely uphold conversion rates of 80% or higher. *See United States v. Taylor*, 116 F.3d 269, 273-74 (7th Cir. 1997); *United States v. Singleton*, 545 F.3d 932, 935 n.4 (11th Cir. 2008); *United States v. Pope*, 461 F.3d 1331, 1334 (11th Cir. 2006); *United States v. Fox*, 189 F.3d 1115, 1120 (9th Cir. 1999).

Fouse's second sentencing argument is that the district court impermissibly considered the involvement of weapons as a factor when determining his conspiracy sentence. Fouse says that taking the weapons into account when sentencing on the conspiracy charge constituted "double counting" because he received a consecutive 60-month term of imprisonment for possession of a firearm in furtherance of the drug conspiracy. *See* 18 U.S.C. § 924(c)(1). The government counters that the district court did not weigh the presence of the guns in fashioning a sentence on the conspiracy count, but we do not share the government's certainty about this factual

question. Fouse, however, offers no authority supporting his assumption that the § 924(c) conviction put the guns off limits to the court when exercising its discretion to select an appropriate sentence on the conspiracy count. It is true that Fouse's gun conviction precluded the court from imposing a two-level upward adjustment when calculating the offense level and resulting imprisonment range on the conspiracy count. *See* U.S.S.G. § 2D1.1(b)(1), 2K2.4(b) & cmt. n.4; *United States v. Chavez*, 549 F.3d 119, 132-33 (2d Cir. 2008); *United States v. Podhorn*, 549 F.3d 552, 560 (7th Cir. 2008). But the district court followed that mandate, so Fouse has no claim that his guidelines range was miscalculated. And after *United States v. Booker*, 543 U.S. 220 (2005), a sentencing court has freedom to consider a broad range of information in deciding on an appropriate sentence, and in exercising that discretion the court may disagree with the weight the Sentencing Commission has assigned to a particular factor. *See United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Because the district court sentenced Fouse to 210 months' imprisonment, the bottom of the properly calculated guidelines range, his sentence is presumptively reasonable. *See Rita v. United States*, 127 S. Ct. 2456, 2462 (2007); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). The court's mention of a weapon in relation to Fouse's drug-conspiracy sentence does not undermine this presumption of reasonableness.

AFFIRMED.